[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DISCOVERY ISSUES
Facts: . . . The parties were married in 1985 and have two minor children issue of the marriage. Thereafter, on December 20, 1985, a Trust Agreement was executed by Frank T. Cary as "the settlor" and Anne C. Cary and Morgan Guaranty Trust Company of New York as "the trustees". The Trust Agreement established separate trusts for each of the four children, issue of Frank T. Cary and Anne C. Cary. The plaintiff, Laura Cary King, is one of those four children.
Substantial shares of stock of publicly traded corporations were transferred to the trust. From 1990 through April 1995, the co-trustees paid to the plaintiff, Laura C. King, the sum of $4,000 per month pursuant to the trust terms. This dissolution action was commenced by the plaintiff against the defendant returnable January 17, 1995. The trustees stopped the payments in April 1995 and have not resumed them.
Article VIII of the Trust Agreement dated December 20, 1985 states: "This agreement and the trusts established herewith shall be irrevocable."
Article II(A) requires the trustees to "invest and reinvest the principal of such trust, shall collect the income therefrom and shall pay to the Beneficiary or any descendent of the Beneficiary . . . so much if any, of the net income there from, without limit as to amount, as the corporation in office as trustee shall, in its absolute discretion, deem advisable from time to time." The plaintiff, as a child of the settlor Frank A. Cary, is defined as "Beneficiary" of the Trust.
Article II(A) further states that in the event that income is not CT Page 2076 paid to the beneficiary, "it shall be added and thereafter dealt with as a part of the principal of such trust." The Trust principal and accrued interest will be distributed to the beneficiary, or their descendants, per stirpes, upon the last to die of the beneficiaries and the settlor's wife Anne C. Cary.
Article II(B) grants to the co-trustee, Anne C. Cary, a limited power of appointment, which if exercised can effectively overrule the provisions of Article II(A). Article II(B) states: "The provisions of Subdivision (A) of this Article notwithstanding, the trustees of each trust established in accordance with the provisions of Article shall, on the death of Anne C. Cary, deal with the then principal of such trust as she shall, by last will duly admitted to probate and not otherwise, direct and appoint".
It appears to this court that the exercise of the limited power of appointment by the last will and testament of the co-trustee, Anne C. Cary, could deprive the plaintiff wife of receiving principal or this Trust. This limited power of appointment can be executed by Anne C. Cary in favor of her other children, the children of the plaintiff, a charitable organization or any combination of any of the above, thereby preventing distribution of any of the trust principal to the wife.
The trustees also are permitted to invade principal for the benefit of the plaintiff and/or any of the other income beneficiaries. In Article III(A) the trustees, in their absolute discretion, are authorized to pay any portion or the trust principal "as the trustees shall deem necessary or advisable (a) for the support of Mrs. Cary in order to allow her to maintain her present standard of living, (b) for the maintenance and education of such child or any of his descendants".
The trust also permits the payment of income to Anne C. Cary not to the plaintiff. Article III(A) permits the trustees "to withhold from any child (or other descendent of the settlor) all or any part of the income which could properly be paid to him, and to pay the amount so withheld to Anne C. Cary, all as the trustee shall deem to be in the best interests of Anne C. Cary, such child and his descendants as a group."
The trustees also have the discretion to distribute to the plaintiff and/or her siblings all or a major portion of the principal of the trust after such individuals reach their forty fifth birthday. The plaintiff is forty-two years of age having been born in December CT Page 2077 1954.
Pursuant to the various provisions of the Trust, the plaintiff received the sum of $4,000 per month from April 1990 through April 1995. It was not disclosed to the court whether the payments were from income, principal or a combination of income and principal. Since April of 1995 no payments of either trust principal or trust income have been paid to the plaintiff. The court read the entire Trust Agreement dated December 20 1985. The parties stipulated that the document on file is the current Trust Agreement and there are no modifications, amendments, deletions or additions to the Trust Agreement.
Discussion: The issue at hand concerns a matter of discovery. . . . Discovery controversies fall into four general categories: the parties dispute whether the information sought is (a) not material, (b) privileged, (c) substantially more available to the disclosing party or (d) within the disclosing party's knowledge, possession or power. If one or more of these factors apply, discovery should be denied. Standard Tallow Corporation v. Jowdy, 190 Conn. 48, 59-60
(1983). Practice Book § 218. . . . The only issue is whether or not the information is "material". Materiality would appear to be satisfied if the information or materials sought will have any legitimate bearing on the controversy and might lead to its disposition." . . .
Connecticut is an equitable distribution state. Bratz v. Bratz,4 Conn. App. 504, 507 (1985). By statute the trial court can consider the following:
(a) Assignment of property — "amount and sources of income" and "estate . . . of each of the parties" C.G.S. § 46b-81 (c);
(b) Alimony — "amount and source of income" and "estate . . . of each of the parties." C.G.S. § 46b-82;
(c) Child support — "earning capacity", amount and sources of income" and "estate . . . of each of the parents" C.G.S. §46b-84 (c). . . .
Connecticut cannot consider an item property for marital distribution if it is a mere expectancy or a contingency which may never occur, Rubin v. Rubin, 204 Conn. 224 (1987); uncertain as the amount that would actually be received, Eslami v. Eslami,218 Conn. 801 (1991) or not susceptible of reasonably accurate quantification, Thompson v. Thompson, 183 Conn. 96, 101 (1981). CT Page 2078
The Connecticut Supreme Court, in its most recent visiting of this subject, considered pension benefits in the context of property under C.G.S. § 46b-81. "The distribution of assets in a dissolution action is governed by § 46b-81, . . . This approach to property division is commonly referred to as an `all-property' equitable distribution scheme. . . . It does not limit, either by timing or method of acquisition or by source of funds, the property subject to a trial court's broad allocative power" (internal citations and quotations omitted) Krafick v.Krafick, 234 Conn. 783, 792 (1995). Krafick established a three step procedure "regarding the equitable distribution of each resource: first, whether the resource is property within §46b-81 to be equitably distributed (classification); second, what is the appropriate method for determining the value of the property (valuation); and third, what is the most equitable distribution of the property between parties (distribution)."Krafick v. Krafick, supra, 792-793.
Each of the three steps set forth in Krafick are analyzed by using the three tools of Rubin v. Rubin, Eslami v. Eslami, and Thompsonv. Thompson. The court will discuss each of these three tools.
The first tool, a mere expectancy or a contingency that may never occur, requires a review of its progeny. Whether the asset is a mere expectancy or subject to speculation was initially discussed in Connecticut in 1978. Krause v. Krause, 174 Conn. 361
(1978). . . . Krause held that testimony of the parties parents' last will and testament which could be changed, amended or revoked at any time was not admissible. It was held to be a mere expectancy.Krause was a hope that was inchoate. . . . .
The Rubin plaintiff was a residuary beneficiary of a revocable intervivos trust created by his mother, funded by $225,000 of securities. The admission into evidence of the revocable trust, was held to be error under Krause v. Krause. The court's "if as and when" order that one-third of whatever net estate the husband may receive from either the trust created by his mother or from her by way or a testamentary gift or other form of inheritance was reversed. . . .
The second tool is Eslami. The rule of Eslami is that property must be certain as to the amount that would actually be received. The trial court in Eslami deferred consideration of the plaintiff's inheritance from the estate of her deceased father until its value CT Page 2079 was known. . . .
Although the trial court in Eslami was sustained in its conclusion that the value of the plaintiff's interest in her father's estate could not be considered, the Supreme Court noted that the award was fashioned in such a manner as to allow for modification of the periodic alimony award when the value of her interest became ascertainable. Under Eslami, the plaintiff's interest in her father's estate was admissible. Her interest in the estate, being subject to a contingent divestment, rendered it uncertain as the amount that would actually be received. The Supreme Court held that once the estate was actually received there could be an application for a modification of periodic alimony based on a substantial change of circumstances. . . .
The third tool is Thompson. The resource must be susceptible of reasonably accurate qualification. Probably the most difficult area is the quantification, division and distribution of marital property. Thompson v. Thompson is the oldest of these trilogy of cases. Difficulties in ascertaining the amount that would actually be received may be resolved if the amounts can be ascertained using reasonably accurate quantification methods. For example, one court has held that if it has present property interest attributes, the court can consider it as part of the parties "estate" under § 46b-81 and § 46b-82. "Present property interests, regardless of value, are components of a parties `estate'." Carlisle v. Carlisle, 12 Conn. L. Rptr. No. 16, 535 (November 14, 1994) 1994 CT Casebase 10744, October 21, 1994 (Harrigan, J.).
In Carlisle, Judge Harrigan considered a motion in limine concerning the wife's potential interest in various trusts. The parties agreed that none of the wife's trusts are subject to revocation modification or amendment. The plaintiff wife's interest in each trust is vested subject to total divestment if she fails to survive the preceding life estate. One trust, from which the wife was currently receiving over $6,000 per year, was discretionary in relation to present income distribution, but not as to principal. The trustees of a second trust have the authority to invade principal for the benefit of the current life estate.
Judge Harrigan framed the issue as follows: "At issue here is whether, under Connecticut statutory and case law, irrevocable vested remainders conditioned on survival are subject to the CT Page 2080 court's consideration in determining property and alimony awards in an action for dissolution." Judge Harrigan cited Trust and Estate Treatises, Krause v. Krause, Rubin v. Rubin and Thompson v.Thompson in concluding as follows: "Under Connecticut statutory and decisional law, the court has broad discretionary powers in shaping financial awards at dissolution. The court considers all statutory criteria including the `estate' of each. Future interests subject to conditions of survival are cognizable assets. Future interests subject to conditions may be valued by applying actuarial principles. That the court considers a future interest in its equitable determination, does not require the court to distribute the interest. However, it would be error for the court to exclude testimony on any one statutory factor." Carlisle v. Carlisle, supra, 10750-10751. . . .
To what extent a trust, containing divestment power, can be considered in dissolution awards, was the subject of Tremaine v.Tremaine, 235 Conn. 45 (1995). There are four reported decisions on the Tremaine's dissolution case. . . .
In a lengthy decision the Supreme Court reversed this conclusion of both the trial court and the Appellate Court. It remanded the case for a new hearing limited only to a consideration of periodic alimony. Tremaine v. Tremaine,235 Conn. 45, 67 (1995). The decision analyzed the terms of the trust and its distribution on two levels; the entire trust and income portions of the trust.
The corpus of the trust was held not to be properly considered by the trial court in considering lump sum award. "We disagree that the trial court, on the record before it, properly included the value of the entire trust corpus in its calculation of the defendant's estate for the purpose of determining alimony." Tremaine v. Tremaine, supra 54. It appears in Tremaine that the Supreme Court considered the trust relevant as to the statutory factor of "amount and source of income" but not relevant as to the factor of "estate . . . of each of the parties". C.G.S. Section 46b-82.
. . . [T]he Supreme Court concluded that the trust corpus is not part of the defendant's estate. The decision did hold that a portion of the trust may be considered for periodic alimony purpose under C.G.S. Section 46b-82. . . .
The Supreme Court has acknowledged that Thompson's
CT Page 2081 quantification standards can be satisfied by an order contingent upon some future event. Rubin v. Rubin found such an order inappropriate due to the expectancy nature of the revocable trust. Burns v. Burns, 41 Conn. App. 716 (1996) indicates that the trial court may issue a contingent order and include in it a periodic alimony award of a future share of the spouse's earned income. Periodic alimony may be contingent on some future event.Burns v. Burns, supra 727-728; Lawler v. Lawler,16 Conn. App. 193, 196-197 (1988).
It appears that the contingent future periodic alimony award rule is applicable to contingent property awards. Under Thompsonv. Thompson, "the present value of a pension benefit may be arrived at by using generally accepted actuarial principles to discount for mortality, interest and the probability of the employee remaining with the employer until retirement age." Thompson v.Thompson, supra, 101. . . .
The court has analyzed the three steps under Krafick v. Krafick
as to classification, valuation and distribution. A number of these cases turn on the issues of evaluation and methods of distribution. A surprisingly number of the cases arise out of evidentiary rulings;Krause v. Krause, Rubin v. Rubin, and Carlisle v. Carlisle.
Although Krafick outlines three steps, there appears to be a fourth step; discovery. Krafick did not consider discovery rules.
The irrevocable trust is not an inchoate right. The plaintiff has actually received trust funds for over five years. The plaintiff can be divested of the trust income or corpus of the trust by events over which she has no control. Thus, it is uncertain as to the exact amount of trust corpus she would receive. Although the exercise of the limited power of attorney may not be quantified underThompson v. Thompson by using normal actuarial standards, survival by the plaintiff of her mother can be determined by mortality tables. This case presents substantial issues as to valuation and distribution. A less substantial issue is classification. Carlisle v.Carlisle, supra, 10751.
The court is also mindful that evidence of five years of payments from a third party source can be considered. The plaintiff wife received $48,000 per year on a consistent basis from two trustees over a five year period. Evidence of a pattern of payments by a third party is admissible in a dissolution case as payments in the nature of "income". Krause v. Krause, supra 364, Rubin v.Rubin, supra 226. CT Page 2082
This court has not been asked to, nor has it decided whether the December 20, 1985 Trust is "property" under C.G.S. § 46b-81
C.G.S. § 46b-82 or C.G.S. § 46b-84. It has not been asked to decide, nor has it decided "classification" under Krafick v.Krafick, supra 707, nor has the court decided the "mere expectancy" issue of Rubin v. Rubin, the "uncertainty" issue of Eslami v.Eslami nor the "qualification" issue of Thompson v. Thompson.
These issues remain for another day, possibly at trial during the admissibility of evidence stage. Krause v. Krause, supra 364;Rubin v. Rubin, supra 226; Carlisle v. Carlisle, supra 10751.
This court finds that the terms of the trust, as well as its income and principal are "material" to this litigation. Standard TallowCorporation v. Jowdy, supra 59. As such it is discoverable. P.B. § 218.
Tierney, J.